**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT GREEN FAIRBANK,
          *Petitioner-Appellant,*

       v.

ROBERT L. AYERS, JR., Warden for
California State Prison at San
Quentin,
          *Respondent-Appellee.*

No. 08-99018

D.C. No.
3:98-CV-01027-
CRB

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted
December 10, 2010—San Francisco, California

Filed February 15, 2011
Amended August 10, 2011

Before: Mary M. Schroeder, Sidney R. Thomas, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Thomas

10517

## COUNSEL

Mark Raymond Drozdowski, Federal Public Defender, Los Angeles, California, for the appellant.

Nanette Sue Winaker, Deputy Assistant Attorney General, San Francisco, California, for the appellee.

## ORDER

The opinion is amended as follows:

1.  Page 2473, line 19 to line 23. Replace:

    Fricke's testimony was generally favorable to defendant, and any negative inferences were based on a trial strategy of gaining credibility with the jury to argue that Fairbank could be controlled in prison, thereby making a death sentence unnecessary.

    With:

    Fricke's testimony was generally favorable to defendant, and any negative inferences were based on a reasonable trial strategy of gaining credibility with the jury to argue that Fairbank could be controlled in prison, thereby making a death sentence unnecessary.

2.  Page 2477, line 10 to line 17. Replace:

Because a federal court sitting in habeas must presume that a factual determination made by a state court is correct, and because there is no clear and convincing evidence to the contrary, we hold that Fairbank's prosecutorial misconduct claim is procedurally barred. *See* 28 U.S.C. § 2254(e); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas.").

With:

"We must follow the well-settled rule that 'the independent state grounds doctrine bars the federal courts from reconsidering the issue in the context of habeas corpus review as long as the state court explicitly invokes a state procedural bar rule as a separate basis for its decision.' " *Jackson v. Giurbino*, 364 F.3d 1002, 1006-07 (9th Cir. 2004) (quoting *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995)).

To bar federal review, the state procedural rule must also be adequate. That is, it must be "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Melendez v. Pliler*, 288 F.3d 1120, 1124 (9th Cir. 2002) (internal quotation marks and citation omitted). We have held that California consistently applies its contemporaneous objection rule when a party fails to object to the admission of evidence. *See Garrison v. McCarthy*, 653 F.2d 374, 377 (9th Cir. 1981); *see also Melendez*, 288 F.3d at 1125. On direct review, the California Supreme Court determined that defense counsel could have known the prosecutor's questioning was likely to elicit the racial slur and probably could have prevented the statement by objecting. *See Fairbank*, 16 Cal. 4th at 1252. Because a federal

court sitting in habeas must presume that this finding of fact is correct, *see* 28 U.S.C. § 2254(3), and because there is no clear and convincing evidence to the contrary, we conclude that the California Supreme Court applied an independent and adequate state procedural rule that bars federal review of Fairbank's prosecutorial misconduct claim.

Because Fairbank has defaulted his federal claim, for us to be able to review it, Fairbank must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Franklin v. Johnson*, 290 F.3d 1223, 1230-31 (9th Cir. 2002). To establish cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). We need not decide whether there is cause for the default because we conclude that Fairbank has not shown the requisite prejudice. The statement was never again referenced in the trial, and race or racial animus was never advanced as a factor in either Fairbank's actions or his potential sentence. As such, Fairbank has not shown that the statement "infect[ed] his entire trial with error of constitutional dimensions." *See Murray v. Carrier*, 477 U.S. 478, 494 (1986) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (internal quotation marks omitted)).

With these amendments, the petition for rehearing is DENIED. The petition for rehearing en banc was circulated to the judges of the court, and no judge requested a vote for en banc consideration. The petition for rehearing en banc is DENIED. No further petitions for rehearing or rehearing en banc will be entertained.

**OPINION**

THOMAS, Circuit Judge:

Robert Green Fairbank, a California state prisoner, appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition challenging his guilty plea and capital sentence for murder. Fairbank alleges trial counsel rendered ineffective assistance by: (1) failing to investigate and present mitigating evidence; (2) presenting allegedly prejudicial and aggravating information; (3) advising Fairbank to plead guilty after two days of trial; and (4) portraying Fairbank in a negative light in closing arguments. Fairbank also alleges that the use of letters written by him to a jailhouse informant violated his right to counsel under the Sixth Amendment and that the prosecutor committed misconduct by eliciting testimony about Fairbank's racial slur. Finally, Fairbank alleges he was prejudiced by the cumulative impact of these errors. We have jurisdiction under 28 U.S.C. § 2253, and we affirm.

I

On December 5, 1985, Fairbank invited his neighbor, Arlene G., into his home under false pretenses and sexually assaulted her. Fairbank was convicted of crimes associated with this conduct in 1985. One week after this assault and Fairbank's subsequent arrest, while Fairbank was released on his own recognizance, Wendy Cheek disappeared. On December 14, 1985, a motorist found a body in a grove of trees near a highway, and fingerprints confirmed the body was Cheek's. The body was naked, had numerous stab wounds, and was partially burned. Fairbank was arrested and charged with the first degree murder of Cheek, with special circumstances of attempted rape, unlawful oral copulation, use of a deadly weapon, and torture.

While awaiting trial in 1986, Fairbank occupied a jail cell near John Szymkiewicz. Fairbank wrote Szymkiewicz numer-

ous letters discussing evidence from the Cheek murder, and he asked Szymkiewicz to "cop to the [Cheek] murder or set up an alibi" in return for money. He also asked Szymkiewicz for help in hurting and intimidating the potential witnesses. Szymkiewicz contacted law enforcement officers to see if they would be interested in information about Fairbank's case in exchange for leniency in the charges pending against Szymkiewicz.

Prior to trial, Fairbank moved to exclude the letters, arguing that Szymkiewicz acted as a state agent to obtain incriminating statements in violation of *Massiah v. United States*, 377 U.S. 201 (1964). The state trial court held an evidentiary hearing on the claim, during which it heard testimony from six witnesses. The trial court held that there was no *Massiah* violation because the statements were not deliberately elicited by law enforcement personnel. In a later hearing, Szymkiewicz stated on cross-examination that he believed if he obtained enough information, the law enforcement officers would be interested. However, on re-direct, Szymkiewicz reiterated that the officers did not order or suggest to him to obtain more information. In this later hearing, the court again ruled that Szymkiewicz was not a state agent.

The case proceeded to trial. During voir-dire, Fairbank's trial counsel admitted that Fairbank had killed Cheek but repeatedly questioned the potential jurors about their views on elevating the homicide into first degree murder. As trial counsel explained to one panel, "what the evidence will show and what we are essentially conceding is that Mr. Fairbank is responsible for the killing, and it will be up to the jury to decide what degree of guilt should be put on that." The prosecution's opening statement and first eight witnesses detailed the heinous nature of the Cheek murder and the Arlene G. assault. At one point during the opening statement, the prosecutor mentioned the Szymkiewicz letters and showed the jury a blown-up copy of one of the notes. After less than two full days of testimony, Fairbank pled guilty to first degree murder

and the special circumstances of attempted oral copulation, torture, and use of a deadly weapon. Although Fairbank did not enter into any type of plea deal in exchange for his guilty plea, the prosecutor dropped the attempted rape special circumstance, and the court dismissed that charge.

Prior to the sentencing phase of the trial, Fairbank's trial counsel moved again to exclude the Szymkiewicz letters, arguing that the letters were irrelevant now that Fairbank had admitted guilt. The prosecution opposed this motion, explaining that the letters were relevant at sentencing to show Fairbank's state of mind both during and after the crime. The court admitted the two letters in which Fairbank sought Szymkiewicz's help in intimidating potential witnesses and took under submission a ruling on the other letters purporting to discuss facts of the crime.

During the sentencing phase, the defense strategy was to gain credibility with the jury by admitting the seriousness of Fairbank's crime but showing that he had accepted responsibility for his actions and that he was controllable in prison, thereby making the death penalty unnecessary. The defense presented two expert witnesses and four lay witnesses. The first expert witness, Dr. Clark, was a psychiatrist with a speciality in addiction medicine. Clark had reviewed Fairbank's medical records, prior criminal records, and the evidence associated with the Cheek murder. Before Clark testified, Fairbank's trial counsel moved to prevent the prosecution from questioning Clark about the Szymkiewicz letters not admitted into evidence. Trial counsel explained that even though Clark was prepared to testify that "some of the behavior that Mr. Fairbank exhibited during those incidents is, in fact, consistent with him being impaired by the use of cocaine," the decision not to question him as to drug psychosis was a "tactical decision." The prosecution responded by arguing that, "[i]f the doctor says that this psychosis is something that causes a person to blackout or causes a person's memory to fail or that they don't know what they were doing

at the time, I think it may be very probative that several months later he was able to specify certain details." Trial counsel reiterated its strategy that "[t]he doctor is not going to state any opinion as to what Mr. Fairbank's mental state was on December 12, 1985. We're taking the view that is something the jury is going to have to decide based on what the facts are and based on what his general description is of this kind of problem." The court ruled that the prosecution could not mention the excluded letters. Clark then testified generally about the effects of cocaine use and drug psychosis but did not testify about Fairbank's drug use during or before the Cheek murder.

The second expert witness Fairbank's trial counsel presented was Dr. Fricke, a clinical psychologist. Trial counsel again moved to prevent the prosecutor from mentioning the letters because Fricke would "not be discussing anything that relates to mental states at the time of the offense." The court once more granted the motion to prevent introduction of the letters. Fricke testified that he had reviewed the medical records from Fairbank's previous stays at Mills and Peninsula Hospitals, administered psychological tests to Fairbank, reviewed psychological tests performed by other doctors, reviewed Fairbank's prior criminal history including the Arlene G. assault, traveled to Fairbank's hometown to interview approximately thirteen acquaintances and family members, and reviewed the trial transcripts from previous witnesses in the Cheek trial. Additionally, because of Fairbank's extensive drug use, Fricke stated that he "worr[ied] about some kind of brain injury" and referred Fairbank to Dr. Billing, who specialized in neuropsychological testing. Fricke and Billing both concluded that Fairbank suffered from Antisocial Personality Disorder ("ASPD"), a condition that Fricke stated is "not a mental illness." However, Fricke clarified that there was a difference between the concepts of psychotic disturbance, for which he was testing, and cocaine psychosis, the general nature of which Clark had testified to earlier. Fricke concluded that because Fairbank's ASPD is aggravated when

he is using drugs and part of a "loose" social structure, prison would provide (and had provided in the past) the type of structured environment in which Fairbank's disorder could be managed.

During cross-examination, the prosecution asked whether Fricke's psychological tests identified Fairbank's "racial attitudes." The court sustained Fairbank's trial counsel's objection to that question. The prosecution then began asking about a specific test Fricke administered, questioning whether Fairbank was trying to correctly answer the questions on that test. When Fricke responded that Fairbank was "adequately motivated," the prosecution drew Fricke's attention to the many questions Fairbank either answered incorrectly or did not attempt to answer. One of these questions was, "Who was Martin Luther King?" to which Fricke responded that Fairbank had said, "A dead nigger, don't like black people." Fairbank's trial counsel did not object.

In addition to the two experts, Fairbank's trial counsel presented four lay witnesses: Fairbank's father; a childhood friend of Fairbanks, Steve Adkins; a neighbor of the Fairbank family, Norton Morrison; and a friend of Fairbank's mother, Rebecca Lyon. These witnesses testified, among other things, about the childhood abuse Fairbank suffered from his father and the extensive alcohol use in his family.

In closing arguments, the prosecution highlighted the lack of humanizing background evidence presented about Fairbank, the fact that Fairbank did not suffer from a mental defect, and the lack of evidence of intoxication on the day of the Cheek murder. Fairbank's trial counsel responded by saying he did not expect the jury to have sympathy for Fairbank, but argued forcefully that a death sentence was unnecessary due to Fairbank's ability to be controlled in prison. Trial counsel also emphasized mitigating evidence such as Fairbank's abusive childhood and extensive drug use, consistently explaining that the mitigation evidence did not undermine

Fairbank's guilt but helped explain his actions. The jury returned a death verdict. Fairbank then moved to withdraw his guilty plea on the ground that it was involuntary because he was intoxicated on alcohol and prescription medication at the time he entered the plea. The court denied the motion.

Fairbank's direct appeal in state court claimed, among other things, ineffective assistance of trial counsel for advising Fairbank to plead guilty, ineffective assistance of counsel during the sentencing phase, a *Massiah* violation for introduction of the Szymkiewicz letters, and prosecutorial misconduct for eliciting Fairbank's racial slur. The California Supreme Court affirmed Fairbank's conviction on the merits in a reasoned decision.

In 2000, Fairbank filed a federal habeas petition containing his exhausted record-based claims and an exhaustion petition in the California Supreme Court asserting new claims. In both petitions, Fairbank requested discovery and an evidentiary hearing. The district court stayed the federal case pending the resolution of the state petition. In 2003, the California Supreme Court summarily denied Fairbank's petition on the merits. Fairbank then filed an amended habeas petition in federal court to include his newly exhausted claims. The government moved for summary judgment on the petition. Fairbank opposed the motion, arguing he was entitled to discovery and an evidentiary hearing before summary judgment would be appropriate. The district court granted the government's motion for summary judgment, and Fairbank timely filed this appeal.

We review a district court's order to deny a petition for writ of habeas corpus *de novo*. *Estrada v. Scribner*, 512 F.3d 1227, 1235 (9th Cir. 2008). We review a district court's decision to deny an evidentiary hearing for abuse of discretion. *Id.*

To obtain relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132,

110 Stat. 1214, a state prisoner must show that the state court's decision (1) was contrary to clearly established federal law as determined by the Supreme Court, (2) "involved an unreasonable application of" such law, or (3) that it "was based on an unreasonable determination of the facts" in light of the record before the state court. *Harrington v. Richter*, ___ U.S. ___, No. 09-587, 2011 WL 148587, at *10 (Jan. 19, 2011) (quoting 28 U.S.C. § 2254) (internal quotation marks omitted).

## II

The district court correctly determined that Fairbank was not entitled to habeas relief on his claim that his counsel was constitutionally ineffective. To prevail on an ineffective assistance of counsel claim, a petitioner must establish both that counsel's performance was deficient and that he was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The test for deficiency is "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotation marks and citation omitted). The test for prejudice in a capital case is "whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 695.

In reviewing a state prisoner's habeas petition under AEDPA, the "state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 2011 WL 148587, at *10. Under AEDPA, the petitioner must show that the state court "applied *Strickland* to the facts of his case in

an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

For a federal habeas court to grant an evidentiary hearing on an ineffective assistance claim, however, a petitioner must only show a "colorable claim of ineffective assistance." *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007). Although the standard required to obtain an evidentiary hearing is less stringent than that required to prove a *Strickland* claim, AEDPA deference still guides our decision. As the Supreme Court explained:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate. It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.

*Landrigan*, 550 U.S. at 474 (citations and footnote omitted); *see also Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record." (emphasis omitted)).

Fairbank claims his trial counsel was ineffective for four reasons: (1) failing to investigate and present mitigating evidence; (2) presenting allegedly prejudicial and aggravating information; (3) advising Fairbank to plead guilty after two days of trial; and (4) portraying Fairbank in a negative light in closing arguments.

A

**[1]** The district court did not err in rejecting Fairbank's claim that his attorneys were ineffective for failing to investigate and present mitigating evidence of his brain damage, mental illness, substance abuse, childhood abuse and neglect, and redeeming characteristics. As the district court properly concluded, the record demonstrates that defense counsel satisfied their constitutional obligations.

**[2]** The undisputed record establishes that Fricke reviewed Fairbank's personal history carefully. He traveled to Fairbank's home town and personally interviewed numerous witnesses. Fricke reviewed Fairbank's medical records, conducted a psychological examination, and referred Fairbank to a specialist for neurological testing. Based on the test results, Fricke ruled out psychosis, mental illness, and neurologic impairment. He concluded that Fairbank had Antisocial Personality Disorder.

In his habeas petition, Fairbank alleges that a neuropsychologist and a physician specializing in addiction medicine disagree with the conclusions reached by Fricke. Fairbank's new experts, he alleges, believe that he was suffering from brain damage at the time of the crime and that this damage should have been apparent when Fricke conducted his review. Fairbank also alleges that Fricke should have personally interviewed Fairbank's treating health care professionals, rather than relying on medical records. If Fricke had done so, Fairbank alleges, he would have discovered additional mitigation evidence.

**[3]** However, even assuming all the allegations are true, Fairbank cannot prove a *Strickland* violation, because "[a]n expert's failure to diagnose a mental condition does not constitute ineffective assistance of *counsel*, and [a petitioner] has no constitutional guarantee of effective assistance of experts." *Earp v. Cullen*, 623 F.3d 1065, 1077 (9th Cir. 2010).

Fairbank's claim may be easily distinguished from *Caro v. Woodford*, 280 F.3d 1247 (9th Cir. 2002), in which we held that counsel's failure to investigate the potential for brain damage constituted ineffective assistance of counsel. In *Caro*, defense counsel wholly failed to investigate the potential defenses or provide experts with the information necessary to evaluate the petitioner's alleged brain damage. *Id.* at 1254-55. In contrast, counsel in this case provided the defense expert with the information necessary to form an expert opinion, and the expert did, in fact, investigate the potential defense. Later disagreement by other experts as to the conclusions does not demonstrate a violation of *Strickland*.

**[4]** In addition, in *Caro*, we emphasized that there was no strategic reason not to introduce or investigate such evidence. *See id.* at 1255. Here, in contrast, defense counsel made a strategic decision to not place Fairbank's mental state in play to avoid the introduction of aggravating evidence. Such a strategic decision is accorded a high level of deference by reviewing courts. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); *see also Wong v. Belmontes*, 130 S. Ct. 383, 386 (2009) ("[I]t is necessary to consider *all* the relevant evidence that the jury would have had before it if [trial counsel] had pursued the different path—not just the mitigation evidence [he] could have presented, but also the . . . murder evidence that almost certainly would have come in with it."); *Silva v. Woodford*, 279 F.3d 825, 846 (9th Cir. 2002) ("Given the strong possibility that the introduction of certain types of mitigating evidence by the defense could lead to damaging rebuttal evidence . . . , his counsel exercised reasonable judgment in refraining from introducing any evidence whatsoever during the penalty phase.").

**[5]** In addition to claiming ineffective assistance for failing to present evidence of his alleged brain damage and mental defects, Fairbank alleges ineffective assistance due to trial

counsel's failure to present evidence of his substance abuse and abusive childhood in order to help explain his actions on the day of the crime. However, trial counsel fully investigated Fairbank's prior drug use and made a strategic decision to avoid mental state evidence to prevent the prosecution from referencing the Szymkiewicz letters, to gain credibility with the jury, and to emphasize that Fairbank had admitted responsibility for his crime. Additionally, evidence of Fairbank's drug use, propensity for addiction, and abusive childhood was in fact presented to the jury through the testimony of Fricke, Arlene G., and two other witnesses. Trial counsel further presented such mitigating evidence in his closing statement by asserting that "drugs were a factor," that "obviously . . . Fairbank is a drug addict," and by emphasizing the role that childhood abuse played in Fairbank's development. Further introduction of such evidence would have been unnecessarily cumulative and would have undermined trial counsel's strategy of admitting guilt and gaining credibility with the jury. *See Belmontes*, 130 S. Ct. at 388 (trial counsel is not required to present cumulative mitigating evidence); *Babbitt v. Calderon*, 151 F.3d 1170, 1174 (9th Cir. 1998) (same).

**[6]** Fairbank argues that although the jury was presented with this evidence, an expert should have been used to link the childhood abuse to the possibility of brain damage and to explain that Fairbank's behavior during the homicide reflected symptoms of cocaine psychosis. However, Clark testified generally about the effects of drug psychosis and the role genetics play in susceptibility to addiction, and Fricke testified about the role of environmental stimuli and genetics in developing ASPD. Even though the experts did not explicitly make these correlations with respect to Fairbank, the jury had enough information to evaluate the claims without exposing Fairbank to the harmful Szymkiewicz letters. This is all the law requires. *See Belmontes*, 130 S. Ct. at 388 ("[T]he body of mitigating evidence . . . was neither complex nor technical. It required only that the jury make logical connections of the kind a layperson is well equipped to make. The

jury simply did not need expert testimony to understand the 'humanizing' evidence; it could use its common sense or own sense of mercy.").

**[7]** Fairbank's final reason for claiming ineffective assistance based on the failure to present mitigating evidence is trial counsel's failure to present evidence about Fairbank's positive attributes. If trial counsel had attempted to provide more humanizing attributes, prosecutors could have cross-examined the character witnesses with questions about their knowledge of Fairbank's violent behavior, asked about their knowledge of the heinous circumstances surrounding the Cheek murder, and presented contrary evidence on rebuttal. For example, the government's cross-examination of defense witness Lyon included questions such as "Would you have predicted that defendant would have been capable of finding a young woman off the street, a stranger, and sexually abusing her, torturing her and stabbing her to death?" *See also Belmontes*, 130 S. Ct. at 388-89 (finding no *Strickland* violation when trial counsel failed to introduce humanizing evidence because of the negative evidence that would have been thereby introduced). Furthermore, the presentation of such evidence may have undermined the trial strategy of admitting guilt and gaining credibility with the jury.

**[8]** In sum, the district court properly concluded based on the record that summary judgment was appropriate on Fairbank's claim that his counsel was ineffective for failing to investigate and present mitigating evidence.

B

Fairbank's second ineffective assistance claim stems from trial counsel's presentation of allegedly aggravating and prejudicial evidence. Fairbank contends that trial counsel's defense that Fairbank had ASPD constituted ineffective assistance because it was inaccurate, was not presented as a mitigating factor, was inaccurately described in highly prejudicial

terms, and overwhelmed any other mitigating evidence. Additionally, Fairbank alleges that trial counsel's presentation of defense witnesses who made damaging statements about Fairbank constituted ineffective assistance.

[9] The record refutes Fairbank's claims that trial counsel was deficient in this regard. Fricke's testimony was generally favorable to defendant, and any negative inferences were based on a reasonable trial strategy of gaining credibility with the jury to argue that Fairbank could be controlled in prison, thereby making a death sentence unnecessary. For example, trial counsel stated in his closing statement that "[j]urors come to court . . . assuming that the defense attorneys are going to try to minimize the situation, to try to, perhaps put a white wash over what the defendant is and what he's done. We're quite aware in this case that we've done the opposite."

[10] Fricke's testimony similarly demonstrated the attempt to gain credibility, as he stated, "I see myself as trying to stay in a neutral position to provide information . . . to the jury." Because the record demonstrates the strategic nature of any allegedly prejudicial statements, the district court did not abuse its discretion in denying Fairbank an evidentiary hearing. *See Landrigan*, 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."); *Strickland*, 466 U.S. at 690.

C

[11] Fairbank's third argument for claiming ineffective assistance is that counsel failed to adequately investigate and present evidence during the guilt phase to show that Fairbank lacked the specific intent required for conviction of first degree murder and the special circumstances allegations. Fairbank's *Strickland* claim at the guilt phase must be limited to the contention that trial counsel was ineffective only in advising petitioner to plead guilty. *See Tollett v. Henderson*, 411

U.S. 258, 266-67 (1973) (explaining that because a guilty plea precludes a claim of constitutional violations prior to the plea, petitioner's sole avenue for relief is demonstrating that advice of counsel to plead guilty was deficient); *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004) (same). Although the record does not contain an explanation from trial counsel as to why Fairbank was advised to plead guilty less than two days into trial, it fully illustrates the logical and strategic reasons for such a decision. Specifically, the guilty plea enabled trial counsel to exclude most of the Szymkiewicz letters and to cast Fairbank in a more sympathetic light, as evidenced by trial counsel emphasizing Fairbank's admission of guilt during closing arguments. Because the record evidences the strategic nature of the decision, and therefore precludes habeas relief, the district court did not abuse its discretion in denying an evidentiary hearing on this claim. *Landrigan*, 550 U.S. at 474; *Strickland*, 466 U.S. at 690.

## D

**[12]** Fairbank's fourth and final ineffective assistance claim utilizes brief portions of trial counsel's closing argument to claim his trial counsel unreasonably failed to ask for sympathy for Fairbank and emphasized the aggravating testimony presented by Fricke. The record, however, shows that trial counsel's closing argument did not fall below the reasonableness standard required by *Strickland*. Even though at times trial counsel did not paint Fairbank in the most sympathetic light, "counsel cannot be deemed ineffective for attempting to impress the jury with his candor and his unwillingness to engage in 'a useless charade.' " *Florida v. Nixon*, 543 U.S. 175, 192 (2004) (quoting *United States v. Cronic*, 466 U.S. 648, 656 n.19 (1984)).

**[13]** A bare allegation that defense counsel's closing should have more strongly emphasized certain arguments is insufficient to overcome *Strickland*'s "presumption that counsel's conduct falls within the wide range of reasonable profes-

sional assistance." 466 U.S. at 689; *see Davis v. Woodford,* 384 F.3d 628, 651 (9th Cir. 2003) (holding that defense counsel's "unusual" strategy of being antagonistic to the jury in closing argument did not violate *Strickland*).

## III

**[14]** The district court properly held that there was no *Massiah* violation in this case. Under *Massiah v. United States*, 377 U.S. 201 (1964), a criminal defendant's right to counsel is violated when a state agent deliberately elicits an incriminating statement outside the presence of the defendant's counsel. *Id.* at 206. To establish a *Massiah* violation, a defendant must demonstrate both that the informant was acting as a government agent and that the informant deliberately elicited incriminating statements. *United States v. Henry*, 447 U.S. 264, 270 (1980). However, the rule applies even when the defendant initiates the contact with the informant, if the state "knowingly circumvent[s] the accused's right to have counsel present." *Maine v. Moulton*, 474 U.S. 159, 176 (1985). A federal habeas court ruling on a *Massiah* claim must also give the state court opinion the deference required by AEDPA. 28 U.S.C. § 2254(d); *Kuhlmann v. Wilson*, 477 U.S. 436, 459-61 (1986).

Fairbank alleges that the state's use of jailhouse informant Szymkiewicz to obtain admissions from Fairbank regarding facts of the crime, threats to witnesses, and other incriminating evidence violates his Sixth Amendment right to counsel under *Massiah*. However, prior to Fairbank's trial, the state trial court held an evidentiary hearing on the *Massiah* claim and determined Szymkiewicz was not acting as a state agent because law enforcement officers had never asked him to solicit information from Fairbank. In a later hearing, a different judge again ruled that Szymkiewicz was not a state agent. In his habeas declaration, Szymkiewicz now states that, "One of the detectives told me they were looking for a murder weapon, which I understood to be a request to ask Fairbank

about that matter. I therefore asked Fairbank about the subject and he wrote me a note stating that the murder weapon was a barbeque fork, and that his lawyers had it." In light of Szymkiewicz's most recent testimony, Fairbank seeks an evidentiary hearing on his *Massiah* claim.

**[15]** The district court correctly held that Fairbank did not assert a colorable claim for habeas relief because even if Szymkiewicz subjectively believed that the officer's statement as to the murder weapon was a request, this does not constitute the requisite state involvement. *See Hovey v. Ayers*, 458 F.3d 892, 917 (9th Cir. 2006) (stating that informant's subjective belief that he may receive lenient treatment in exchange for information does not amount to a promise or deal by the government sufficient to make the informant a state agent). Furthermore, because there has already been an evidentiary hearing on this subject, wherein the trial court heard testimony from five witnesses other than Szymkiewicz, the district court did not abuse its discretion in determining that the record testimony of these other witnesses outweighed the recently recanted testimony of Szymkiewicz. *See Landrigan*, 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

IV

Fairbank alleges that the prosecutor committed misconduct by eliciting evidence of Fairbank's racial slur. On direct appeal, the California Supreme Court rejected this claim and held that, under California law, trial counsel's failure to object to the comment operates as a procedural bar and forecloses the possibility of appeal. *See People v. Fairbank*, 16 Cal. 4th 1223, 1252 (1997) (citing Cal. Evid. Code § 353). "We must follow the well-settled rule that 'the independent state grounds doctrine bars the federal courts from reconsidering the issue in the context of habeas corpus review as long as the state court explicitly invokes a state procedural bar rule as a

separate basis for its decision.' " *Jackson v. Giurbino*, 364 F.3d 1002, 1006-07 (9th Cir. 2004) (quoting *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995)).

To bar federal review, the state procedural rule must also be adequate. That is, it must be "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Melendez v. Pliler*, 288 F.3d 1120, 1124 (9th Cir. 2002) (internal quotation marks and citation omitted). We have held that California consistently applies its contemporaneous objection rule when a party fails to object to the admission of evidence. *See Garrison v. McCarthy*, 653 F.2d 374, 377 (9th Cir. 1981); *see also Melendez*, 288 F.3d at 1125. On direct review, the California Supreme Court determined that defense counsel could have known the prosecutor's questioning was likely to elicit the racial slur and probably could have prevented the statement by objecting. *See Fairbank*, 16 Cal. 4th at 1252. Because a federal court sitting in habeas must presume that this finding of fact is correct, *see* 28 U.S.C. § 2254(3), and because there is no clear and convincing evidence to the contrary, we conclude that the California Supreme Court applied an independent and adequate state procedural rule that bars federal review of Fairbank's prosecutorial misconduct claim.

Because Fairbank has defaulted his federal claim, for us to be able to review it, Fairbank must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Franklin v. Johnson*, 290 F.3d 1223, 1230-31 (9th Cir. 2002). To establish cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). We need not decide whether there is cause for the default because we conclude that Fairbank has not shown the requisite prejudice. The statement was never again referenced in the trial, and race or racial animus was never advanced as

a factor in either Fairbank's actions or his potential sentence. As such, Fairbank has not shown that the statement "infect[ed] his entire trial with error of constitutional dimensions." *See Murray v. Carrier*, 477 U.S. 478, 494 (1986) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (internal quotation marks omitted)).

## V

**[16]** The combined effect of multiple errors may justify habeas relief "if it renders a trial fundamentally unfair, even where each error considered individually would not require reversal." *Parle v. Runnels*, 505 F.3d 922, 928 (9th Cir. 2007). However, because we hold that none of Fairbank's claims rise to the level of constitutional error, "there is nothing to accumulate to a level of a constitutional violation." *Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).

## VI

In sum, the district court properly held that Fairbank was not entitled to habeas relief. His counsel investigated the available mitigation defenses and made strategic choices as to evidence presentation. The *Massiah* claim fails for lack of sufficient state involvement. We defer to the state court's determination that the prosecutorial misconduct claim was procedurally barred. Because none of the underlying claims rises to the level of a constitutional violation, there is no cumulative error. The district court properly granted summary judgment on the habeas petition.

**AFFIRMED.**