**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ANTHONY VINCENTE GUGLIOTTA,

Petitioner - Appellant,

v.

SILVIA GARCIA,

Respondent - Appellee.

No. 12-55246

D.C. No. 2:03-cv-09615-SJO-CW

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted December 10, 2014
Pasadena, California

Before: PREGERSON, NOONAN, and WARDLAW, Circuit Judges.

Petitioner Anthony Vincente Gugliotta appeals the district court's denial of

his federal habeas petition.  Gugliotta argues that (1) the district court erred by

denying his claim of ineffective assistance of counsel (IAC) because his trial

attorney failed to investigate Gugliotta's mental defects and (2) because his IAC

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

claim was not adjudicated on the merits by the California state courts. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a).

We affirm the district court's decision that the California courts adjudicated Gugliotta's claim on the merits.

Because the record is not sufficiently developed to determine whether Gugliotta is entitled to relief based on his attorney's claimed IAC, we remand for an evidentiary hearing to consider evidence pertinent to that claim.

We review de novo the district court's denial of Gugliotta's habeas petition. *Jennings v. Woodford*, 290 F.3d 1006, 1011 (9th Cir. 2002). Because Gugliotta filed his federal habeas petition after 1996, the Anti-Terrorism and Effective Death Penalty Act (AEDPA) must be considered in this case.[1] *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

Under AEDPA, when a state court has adjudicated a habeas claim on the

---

[1] We are not convinced by Gugliotta's arguments that AEDPA does not apply to this case. An examination of the state court records reveals that the California trial court's jurisdictional rejection of Gugliotta's IAC claim did not produce a reasoned state court decision that the California Court of Appeal or the California Supreme Court could have relied on. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir. 2013), *rehearing en banc denied*, 733 F.3d 794 (9th Cir. 2013) (discussing the interplay between the holdings in *Harrington v. Richter*, 562 U.S. 86 (2011) and *Ylst*). The summary decisions produced by the California Court of Appeal and the California Supreme Court, however, must be presumed to be reasoned and on the merits. *Richter*, 562 U.S. at 99. Accordingly, AEDPA applies.

-2-

merits we grant relief only when adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We may not grant relief unless the state court came to a decision that was objectively unreasonable. *Williams v Taylor*, 529 U.S. 362, 409-10 (2000).

To bring a meritorious IAC claim, Gugliotta must demonstrate his trial counsel's deficient performance and resulting prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). We apply "a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689).

To establish prejudice, Gugliotta must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 664. "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687).

Reviewing the California courts' denial of Gugliotta's IAC claim, the

"question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105.

But "the standard required to *obtain* an evidentiary hearing is less stringent than that required to *prove* a *Strickland* claim." *Fairbank v. Ayers*, 650 F.3d 1243, 1251 (9th Cir. 2011) (emphasis added). To be entitled to an evidentiary hearing, a petitioner must only show a *colorable* claim of ineffective assistance. *Earp v. Ornoski*, 431 F.3d 1158, 1170-72 (9th Cir. 2005) (emphasis added); *see also Stanley v. Schriro*, 598 F.3d 612, 624 (9th Cir. 2010).

Gugliotta alleges that the efforts of trial counsel, Floyd Silliman, constituted deficient performance because of Silliman's failure to investigate Gugliotta's mental defects. *See e.g. Mickey v. Ayers*, 606 F.3d 1223, 1237 (9th Cir. 2010) (noting counsel cannot ignore "abundant signs" of mental illness or rest solely on a "preliminary examination."). The files of Jon Takasugi, Gugliotta's first attorney, contained medical billing records from soon after Gugliotta's birth and "indicated that Mr. Takasugi had attempted to subpoena additional records from the hospital and was investigating the possible mental defense at the time he declared his conflict and was relieved." There is no evidence in the record that Silliman continued investigating after replacing Takasugi. A phone call to Gugliotta's father by Patsy Myers, Gugliotta's re-sentencing attorney, revealed Gugliotta's

possible brain damage since birth. Further evidence of Gugliotta's serious mental defects—a skull fracture as a child, a reading level that never reached higher than a third grade level, low IQ scores from school testing, enrollment in a school for the severely emotionally disabled, repetition of multiple grades in school, failure to graduate from high school—were similarly discoverable through simple investigation.

Silliman failed to call any witnesses and "presented no defense" during trial according to the California Court of Appeal, and there is no convincing argument or evidence that these were strategic choices. *Cf. Cullen v. Pinholster*, 131 S. Ct. 1388, 1404-08 (2011). Silliman's alleged failures, if true, deprived Gugliotta of a fair trial with a reliable result. Any implicit conclusion by the California courts that Silliman rendered effective assistance of counsel would be an unreasonable determination of these facts and an unreasonable application of clearly established federal law under *Strickland*.

The strength of the evidence showing Gugliotta's mental defects brought forth by Myers, Gugliotta's re-sentencing attorney after Silliman stepped down following trial, demonstrates a colorable claim that Gugliotta was prejudiced by Silliman's alleged IAC. After examining Gugliotta and reviewing available records, forensic psychologist, Carl Osborn, found that Gugliotta's comprehension

abilities "hover around the somewhat arbitrary [I.Q.] cutoff score of 70 for mild mental retardation. . . . When combined with the effects of alcohol and cocaine intoxication, serious doubts arise whether [Gugliotta] formed the specific intent necessary for the crimes for which he was convicted." Considering evidence of Gugliotta's mental defects that was never presented to the trial court, our confidence in the result of Gugliotta's trial is undermined. Similarly, our confidence in the summary denials of the California appellate courts is undermined by the lack of any evidentiary hearing on this matter at any stage in the litigation. *See Nunes v. Mueller*, 350 F.3d 1045, 1056 (9th Cir. 2003) (recognizing that an evidentiary hearing assists in finding a state court's denial of a claim to be objectively reasonable under AEDPA and *Strickland*).

Because all of Silliman's notes were destroyed upon his death after illness, a year after Gugliotta's trial, the record is not sufficiently complete to satisfy us that there can be *no* reasonable argument that trial counsel Silliman satisfied AEDPA's and *Strickland*'s deferential standards. Gugliotta has shown a colorable claim of IAC and the facts of the case necessitate an evidentiary hearing. *See Earp*, 431 F.3d at 1166-67; *Howard v. Clark*, 608 F.3d 563, 572-73 (9th Cir. 2010).

Even the victim, Maria R., stated that "[Gugliotta] didn't do anything except be with the wrong person at the wrong time and not try and prevent the crime."

Gugliotta's habeas petition merits an evidentiary hearing to address the apparent deficient performance of Gugliotta's trial counsel. We therefore remand to the district court for an evidentiary hearing to supplement the record relating to Silliman's pre-trial investigation into Gugliotta's mental health and to determine if there is any reasonable argument that Silliman provided effective assistance of counsel in his pre-trial investigation.

**AFFIRMED IN PART, and REMANDED for an evidentiary hearing.**