# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD DALE STOKLEY,
      *Petitioner-Appellant,*

v.

CHARLES L. RYAN,
      *Respondent-Appellee.*

No. 09-99004

D.C. No.
4:98-CV-00332-FRZ

OPINION

Appeal from the United States District Court
for the District of Arizona
Frank R. Zapata, Senior District Judge, Presiding

Argued and Submitted
March 18, 2011—San Francisco, California

Filed September 26, 2011

Before: M. Margaret McKeown, Richard A. Paez, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge McKeown

---

**COUNSEL**

Amy Krauss, Law Office of Amy B. Krauss, Tucson, Arizona; Cary Sandman (argued), Waterfall, Economidis, Caldwell, Hanshaw & Villmana, P.C., Tucson, Arizona; Jon M. Sands, Federal Public Defender's Office, Phoenix, Arizona, for the petitioner-appellant.

Thomas C. Horne, Arizona State Attorney General; Jonathan Bass (argued), Assistant Attorney General Criminal Appeals/Capital Litigation Division, for the respondent-appellee.

---

**OPINION**

McKEOWN, Circuit Judge:

Richard Dale Stokley was sentenced to death for the murder of two thirteen-year-old girls. Stokley challenges that sentence under 28 U.S.C. § 2254, arguing that he should receive an evidentiary hearing to develop the claim that his trial counsel provided ineffective assistance at sentencing by failing adequately to investigate and present evidence that Stokley suffered from organic brain damage at the time of the murders. Although trial counsel's actions may seem imperfect in hindsight, counsel undertook an extensive investigation into Stokley's mental health, arranged for him to be evaluated by

a neuropsychologist, and presented testimony from a psychologist and a neurologist. Under the demanding standard of *Strickland v. Washington*, 466 U.S. 668 (1984), Stokley has not presented a colorable claim that counsel's actions were constitutionally ineffective. We affirm the district court's denial of an evidentiary hearing.

## BACKGROUND

On July 7, 1991, Stokley was in Elfrida, Arizona, working as a stuntman in Independence Day celebrations. According to Stokley, he asked Randy Brazeal to drive him to a location where Stokley could bathe. On the way there, they picked up Mandy and Mary, two thirteen-year-old girls Brazeal had met earlier that evening. Stokley and Brazeal raped, beat, and strangled the girls and dumped their bodies down an abandoned mine shaft.

The next day, Brazeal turned himself in to the police, and Stokley was arrested in a nearby town. Stokley confessed his involvement in the crimes, admitting that he raped one of the girls, choked her to death, and stabbed both victims with his knife. Brazeal pled guilty to second-degree murder and was sentenced to twenty years in prison. Stokley proceeded to trial. A jury convicted him of two counts of first degree murder, one count of sexual conduct with a minor, and two counts of kidnaping.

The state sought the death penalty. At sentencing, Stokley's trial counsel endeavored to establish numerous mitigating factors. Among other things, counsel presented evidence that Stokley had a difficult childhood, that he was plagued with a history of substance abuse, that he was intoxicated at the time of the crimes, and that he had the ability to be rehabilitated. Counsel also placed considerable weight on the argument that Stokley's "capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law,"

Ariz. Rev. Stat. § 13-751(G)(1), was impaired by both a personality disorder and head injuries.

Counsel relied on two medical experts to establish that Stokley did not have the capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law at the time of the crime. Dr. Michael Mayron, a neurologist, testified that Stokley "suffered multiple head injuries throughout his life," including a blow to the frontal area of his brain with a car jack and an incident in which he suffered "a left parietal compound depressed skull fracture with left parietal lobe contusion" after being hit with a beer mug. Mayron believed that these injuries caused moderate or severe brain damage and weakened Stokley's ability to control his impulses and emotions.

Dr. Larry Morris, a psychologist, testified that in his opinion Stokley "experience[s] difficulties with impulse control and poor judgment" and "tends not to study consequences well but responds impulsively instead." More specifically, Morris diagnosed Stokley with borderline personality disorder and explained that the impulsivity associated with that condition, especially as exacerbated by stress and alcohol, "make[s] it difficult for [Stokley] to conform his behavior to . . . th[e] law."

In addition, counsel sent Stokley to Dr. John Barbour, who administered at least one neuropsychological test. Barbour's test supplemented a report prepared by Dr. Huntley Hoffman, who evaluated Stokley shortly before the murders. Hoffman found that Stokley "has 'superior' intelligence" and that he did not have brain damage but might suffer from a "mild to moderate deficit" in "short and long term left brain memory."

Under Arizona's procedure at the time, the sentencing judge determined the applicable aggravating and mitigating factors. The judge found three aggravating factors—the victims were minors; Stokley committed multiple homicides; and

Stokley committed the crimes in an especially heinous, cruel, or depraved manner. The judge determined that no factors substantially weighed in favor of mitigation and that even if all of the mitigating circumstances existed, "balanced against the aggravating circumstances found to exist, they would not be sufficiently substantial to call for leniency." Regarding Stokley's claim of mental incapacity, the court concluded that Stokley's "capacity to appreciate the wrongfulness of his conduct was not significantly impaired" at the time of the crime. In the sentencing court's view, "[h]aving suffered head injuries and having difficulty with impulse control shed[ ] little light on [Stokley's] conduct in this case," because the evidence "does not show that [Stokley] acted impulsively, only criminally, with evil motive." The court sentenced Stokley to death.

The Arizona Supreme Court affirmed the death sentence on direct appeal. The court reviewed Stokley's history of head injuries, the mental health evidence, and the testimony of Mayron and Morris and recognized that, in appropriate circumstances, "[h]ead injuries that lead to behavioral disorders may be considered . . . mitigating." *State v. Stokley*, 898 P.2d 454, 470 (Ariz. 1995) ("*Stokley I*"). Although the court gave "more mitigating weight to this element than did the trial court," it concluded that any "mitigating weight" from Stokley's incapacities "is substantially offset by the fact that [Stokley] . . . has above average intelligence" and by facts which show that Stokley "made a conscious and knowing decision to murder the victims and was fully aware of the wrongfulness of his actions," "did not exhibit impulsive behavior in the commission of his crimes," and was able "to control his actions" at the time. *Id.* at 470-71 (quotation marks omitted). In reaching these conclusions, the court noted that Stokley discussed killing Mandy and Mary with Brazeal before the murders occurred and that he attempted to cover up the crimes. *See id.* To support its finding of non-impulsiveness, the court also expressly relied on Stokley's "comment to the interrogating [police] officer, 'I . . . choked

'em . . . There was one foot moving though I knew they was brain dead but I was getting scared. . . . And they just wouldn't quit. It was terrible.' " *Id.* at 470.

Stokley's state post-conviction petitions argued, among other things, that trial counsel provided ineffective representation by failing to argue "Stokley's alleged mental incapacity as mitigation for sentencing purposes." The state post-conviction relief ("PCR") court rejected this claim on three grounds. It held that the claim was "precluded . . . because the Arizona Supreme Court rejected the factual basis of [the] claim on direct appeal." The PCR court also denied the claim "for lack of sufficient argument" and as "meritless for lack of a showing of prejudice." On appeal, the state supreme court summarily denied relief.

Stokley then filed a § 2254 petition in the district court, raising a melange of claims. In an initial ruling, the district court held that many of these claims were either procedurally barred or obviously without merit. It concluded, however, that four claims were both "properly exhausted and appropriate for review on the merits following supplemental briefing." Stokley conceded that three of these four arguments could not survive review under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Stokley's remaining argument was that his trial counsel "failed to adequately investigate [Stokley's] mental state at the time of the crime and thereby failed to present compelling mitigation evidence at sentencing." Stokley sought an evidentiary hearing on this claim.

Stokley introduced the declarations of four medical experts in support of his request for a hearing. A supplemental declaration from Morris said that "additional neuropsychological testing" was needed to pinpoint Stokley's brain injuries and their behavioral effects, and that he "recommended to Mr. Stokley's lawyers that [organic deficits] be investigated and that consideration be given to having Mr. Stokley tested by a neuropsychologist." Mayron also provided a new declaration,

which stated that he "d[id] not recall" being "consulted by Mr. Stokley's attorneys between the time of [his] examination of Mr. Stokley and the [sentencing hearing], and [that] if [counsel] had contacted [Mayron, he] would have recommended that Mr. Stokley be examined by a qualified neuropsychologist." The other two declarations used neuropsychological testing to diagnose Stokley with organic damage to both his frontal and parietal lobes, asserted that the previously undiscovered frontal lobe injury had severe behavioral effects, and concluded that because of his brain damage, Stokley was not in control of his actions at the time of his crimes.

After considering these declarations, the district court denied Stokley's request for an evidentiary hearing. The district court declined to decide whether an evidentiary hearing was precluded by 28 U.S.C. § 2254(e)(2), which bars a hearing "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings" and the claim relies on neither "a new rule of constitutional law" nor "a factual predicate that could not have been previously discovered through the exercise of due diligence." *See Stokley v. Ryan*, No. CV-98-332, 2009 WL 728492, at *22 (D. Ariz. Mar. 17, 2009) ("*Stokley II*"). Instead, after thorough and careful review of Stokley's petition, the district court held that Stokley had not presented a colorable claim of ineffective assistance of counsel. *See id.* at *22-*30.

Regarding the ineffectiveness prong of *Strickland v. Washington*, 466 U.S. 668 (1984), the district court found "that [trial] counsel undertook a reasonable investigation into [Stokley's] social, medical, and mental health history," in part by securing the opinions of Mayron and Morris and the test administered by Barbour. *Stokley II*, 2009 WL 728492, at *25. The district court rejected Stokley's specific claim that neuropsychological testing was necessary to an adequate presentation of mitigating evidence because "neither Dr. Morris nor Dr. Mayron affirmatively recommended to counsel that

[Stokley] be examined only by a neuropsychologist." *Id.* at
*26. The court therefore held that trial counsel "adequately
investigated [Stokley's] mental state" and properly "used the
experts . . . to argue that [Stokley] was impulsive and that his
ability to conform his conduct to the requirements of law was
substantially impaired." *Id.* at *27. The district court also held
that Stokley could not prove prejudice from any ineffective-
ness on the part of trial counsel. *See id.* at *28-*30. It did,
however, issue a certificate of appealability regarding Stok-
ley's claim of ineffective assistance at sentencing, *see id.* at
*30-*31, and Stokley appealed.

**[1]** Following oral argument in this appeal, the Supreme
Court decided *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct.
1388 (2011). The Court held that, when a petitioner seeks
habeas relief under 28 U.S.C. § 2254(d)(1), federal courts are
restricted to the state court record when deciding claims pre-
viously adjudicated on the merits by the state courts. In sup-
plemental briefing, the state argues that *Pinholster* applies to
preclude consideration of the declarations Stokley supplied
for the first time in federal court. Stokley, by contrast, now
contends that his federal claim of ineffective assistance at sen-
tencing is fundamentally new and different from the ineffec-
tive assistance claim presented to the state courts in his
supplemental petition. If accepted, Stokley's argument would
mean that *Pinholster* does not apply to his federal claim.

**[2]** We need not determine whether *Pinholster* bars the
consideration of Stokley's new evidence, because the result is
the same in either case. If *Pinholster* applies, it directly bars
Stokley from receiving the only relief he seeks—a hearing to
present new evidence in federal court. And if Stokley is cor-
rect that *Pinholster* does not apply because his federal ineffec-
tive assistance claim was never presented to the state courts,
relief still evades him. Even assuming both that Stokley can
show cause and prejudice for his failure to present the claim
to the state courts and that he has satisfied the diligence
requirement of § 2254(e)(2), Stokley has not presented a col-

orable claim of ineffective assistance of counsel. The net result is that Stokley is not entitled to an evidentiary hearing even if we may consider the evidence presented for the first time to the district court.

## ANALYSIS

### I. THE RULE IN *PINHOLSTER*

AEDPA provides that a federal habeas application may be "granted with respect to any claim that was adjudicated on the merits in State court proceedings" if the adjudication of that claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In *Pinholster*, the Supreme Court held that § 2254(d)(1) "requires an examination of the state-court decision at the time it was made" and on the same record. *See* 131 S. Ct. at 1398. As the Court explained, "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." *Id.* at 1399.

*Pinholster* also held that this bar on new evidence is coterminous with the scope of § 2254(d). If a petitioner presents a claim that was *not* adjudicated on the merits by the state courts, federal review is not necessarily limited to the state record. *See id.* at 1401. Such is the case, for instance, when a petitioner presents a new and different claim in federal court. *See id.* at 1401 n.10. In that situation, "the discretion of federal habeas courts to consider new evidence," *id.* at 1401, is instead cabined by the requirement in § 2254(e)(2) that the petitioner must have attempted "to develop the factual basis of [the] claim in State court."

The Court in *Pinholster* left at least two questions unresolved. The Court expressly reserved the issue of "where to

draw the line between new claims and claims adjudicated on the merits" by the state courts. *Pinholster*, 131 S. Ct. at 1401 n.10. Put another way, *Pinholster* leaves open the question of how to distinguish between a claim that was exhausted in state court and a claim that is transformed by new evidence into a different and novel contention presented for the first time in federal court. The Court in *Pinholster* also had no occasion to speak to the role that new evidence plays in federal habeas proceedings on those rare occasions when an evidentiary hearing is proper.

These unresolved issues are potentially pertinent to our resolution of this case. In his opening brief, Stokley assumed that his ineffective assistance claim had been fairly presented to the state court even though "[n]one of the facts presented in support of the claim were presented in state court." Indeed, in the district court, Stokley affirmatively argued that his claim was exhausted, and the state agreed. Stokley also posited that he satisfied the requirements of § 2254(e)(2) and therefore should be permitted to supplement the record.

After *Pinholster*, we requested supplemental briefing. Not surprisingly, Stokley shifted his position and now argues that his federal petition presented a new claim that had not yet been adjudicated, such that he remains entitled to an evidentiary hearing. Stokley relies on pre-*Pinholster* cases in which we provided a framework for assessing whether a claim is unexhausted because new evidence fundamentally altered the factual underpinnings of the claim. *See, e.g.*, *Beaty v. Stewart*, 303 F.3d 975, 989-90 (9th Cir. 2002); *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999) (citing *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986)). Stokley argues that, under this framework, the ineffective assistance claim in his federal petition is fundamentally different from the claim he presented to the state courts.

We decline to reach this issue or to decide the antecedent question of whether *Pinholster* impliedly overruled our line of

cases interpreting the "fundamentally altered" standard. We do so because Stokley is not entitled to relief if *Pinholster* applies, and he is similarly not entitled to relief even if we construe his federal claim as unexhausted such that we may consider the supplemental evidence he offered to the district court.[1] In addition, although evidentiary hearings were rare even before *Pinholster*, the circuits had been essentially uniform in holding that in the appropriate case new evidence from such a hearing could be considered in determining whether a claim could survive review under § 2254(d). *See Pinholster*, 131 S. Ct. at 1417 (Sotomayor, J., dissenting). It was against this backdrop that Stokley filed his habeas petition and litigated it in the district court. Recognizing that *Pinholster* dramatically changed the aperture for consideration of new evidence, and further recognizing that this is a capital case, we believe it prudent to consider alternative avenues for resolution.

## II. IF *PINHOLSTER* APPLIES: REVIEW RESTRICTED TO THE STATE RECORD

In this section, we assume that Stokley's state petition exhausted the sentencing-phase ineffective assistance claim in his federal petition, because the essence of the claim—that counsel provided ineffective assistance at sentencing by failing adequately to investigate and argue Stokley's mental

---

[1]There is also a third possibility—that *Pinholster* does not apply because one or both of the PCR court's enunciated procedural holdings constitutes an adequate and independent state bar to relief. *See, e.g.*, *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("[T]he adequate and independent state ground doctrine requires the federal court to honor a state [procedural] holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."). Because neither party made this argument on appeal, we assume without deciding that the state courts adjudicated Stokley's ineffective assistance claim on the merits. *See, e.g.*, *Ocampo v. Vail*, ___ F.3d ___, 2011 WL 2275798, at *7 n.11 (9th Cir. June 9, 2011) (declining to consider a potential procedural default not raised by the state).

health as a mitigating factor—remains the same. *Pinholster* therefore applies, with two consequences. Our review is confined to the record before the state courts. *Pinholster*, 131 S. Ct. at 1398. As the Court bluntly put it, "evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id.* at 1400. *Pinholster*'s limitation on the consideration of Stokley's new evidence—the proffered testimony of the neuropsychologist and other medical experts—in federal habeas proceedings also forecloses the possibility of a federal evidentiary hearing, the only relief Stokley currently seeks. If applicable, *Pinholster* therefore requires us to affirm the denial of Stokley's petition.

## III.   IF *PINHOLSTER* DOES NOT APPLY: REVIEW OF ALL THE EVIDENCE

**[3]** We now proceed on the alternate assumption that *Pinholster* does not bar Stokley from presenting new evidence because Stokley's federal ineffective assistance of counsel claim was never presented to the state courts. Even considering the new evidence, we conclude that Stokley has not presented a colorable claim of ineffective assistance of counsel. Because this conclusion bars Stokley from receiving an evidentiary hearing, we only briefly acknowledge—and do not decide—the predicate hurdles Stokley would need to overcome for us to consider his claim, namely whether he could show cause and prejudice for his failure to exhaust and whether he satisfied the diligence requirement of § 2254(e)(2).

### A.   FURTHER PROCEDURAL MATTERS

When a petitioner fails to present a federal claim to the state courts, the claim is unexhausted, and the petitioner must generally return to state court. *See, e.g.*, *Quezada v. Scribner*, 611 F.3d 1165, 1168 (9th Cir. 2010) (published order). But "[a] claim is procedurally defaulted 'if the petitioner failed to exhaust state remedies and the court to which the petitioner

would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.' " *Beaty*, 303 F.3d at 987 (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). In this case, assuming that the federal version of Stokley's ineffective assistance claim was never presented to the state courts, those courts would find the claim procedurally barred because Stokley failed to raise it "in [a] previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(3); *see also Stewart v. Smith*, 536 U.S. 856, 859-61 (2002) (holding that Rule 32.2(a)(3) provides an independent and adequate state procedural bar); *Stewart v. Smith*, 46 P.3d 1067, 1071 (Ariz. 2002) ("The ground of ineffective assistance of counsel cannot be raised repeatedly.").

Because Stokley's claim would be procedurally barred, he would satisfy "the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Coleman*, 501 U.S. at 732 (citations omitted). Federal habeas review of the claim, however, is precluded "unless [Stokley] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Id.* at 750.[2] Since Stokley seeks an evidentiary hearing, he must also demonstrate that he diligently attempted to develop the factual basis of his claim in state court. *See* 28 U.S.C. § 2254(e)(2); *Williams v. Taylor*, 529 U.S. 420, 436-37 (2000).[3]

Stokley argues that the actions of the state and his post-conviction counsel allow him to surmount both of these barri-

---

[2]*Coleman* also includes an exception for situations in which "failure to consider [defaulted] claims will result in a fundamental miscarriage of justice." 501 U.S. at 750. Stokley does not contend that this exception applies.

[3]Stokley does not argue that his claim rests on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court" or that the evidence he presented to the federal court could not have been discovered during his state proceedings. *See* 28 U.S.C. § 2254(e)(2)(A)(i)-(ii).

ers, and we recognize that, at a minimum, Stokley was placed in an untenable and unenviable situation during the state post-conviction proceedings. Harriette Levitt, Stokley's appointed counsel, filed a cursory PCR petition with the state courts. After Stokley filed complaints against Levitt, Levitt withdrew from the case, and Stokley secured the representation of Carla Ryan, who sought to file a more extensive petition on Stokley's behalf. At the state's urging, however, the PCR court reconsidered its order allowing Levitt to withdraw and reappointed her to represent Stokley for the remainder of the post-conviction proceedings. Shortly after her reappointment, Levitt filed a brief arguing that all of the issues raised by Ryan lacked merit. Upon further reflection and at the express invitation of the state supreme court, Levitt reconsidered in part and filed a supplemental petition including the claim of ineffective assistance of counsel at sentencing initially advanced by Ryan. The supplemental petition was as vague as Levitt's initial petition, and it failed to comply with Arizona Rule of Criminal Procedure 32.5, which requires petitioners to submit "[a]ffidavits, records, or other evidence currently available to the defendant" in support of claims to post-conviction relief.

**[4]** We also recognize, however, that there is "no constitutional right to an attorney in state post-conviction proceedings." *Coleman*, 501 U.S. at 752. Thus, in order to have any hope of meeting the cause and prejudice standard, Stokley must show that the actions taken by Levitt and the state "rose to the level of an external objective factor causing the procedural default." *Smith v. Baldwin*, 510 F.3d 1127, 1147 (9th Cir. 2007) (en banc). This is a standard met in only exceptional cases: "[A]ny attorney error in post-conviction proceedings is generally attributable to the petitioner himself." *Id.* Nevertheless, because Stokley presented a potentially colorable argument that he meets this standard, we assume without deciding that Stokley can show cause and prejudice for his failure to present his claim to the state courts.[4] We similarly

---

[4]We note that a case pending before the Supreme Court raises issues regarding cause and prejudice claims arising from the actions of post-

assume that the diligence requirement in § 2254(e)(2) does not prevent Stokley from receiving an evidentiary hearing. *See West v. Ryan*, 608 F.3d 477, 485 (9th Cir. 2010) (making the same assumption); *see also Williams*, 529 U.S. at 444 (suggesting that the standard for satisfying § 2254(e)(2) is similar to the standard necessary to establish cause and prejudice).

## B.   THE *STRICKLAND* STANDARD

Proceeding on those assumptions, we review Stokley's request for a hearing. We may overturn the district court's "ultimate denial of an evidentiary hearing" only if that denial constituted an abuse of discretion. *Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005).

**[5]** To receive an evidentiary hearing, Stokley must show that he has "a colorable claim of ineffective assistance." *Fairbank v. Ayers*, ___ F.3d ___, 2011 WL 3487027, at *6 (9th Cir. Aug. 10, 2011) (internal quotation marks omitted). Stokley must, in other words, demonstrate that "a hearing could enable [him] to prove . . . factual allegations" that, "if true, would entitle [him] to federal habeas relief." *Id.* (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)).

**[6]** Because Stokley's claim is premised on the alleged ineffective assistance of counsel, he must satisfy the two-pronged test in *Strickland*. Specifically, Stokley must present a colorable claim "that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *West*, 608 F.3d at 485-86 (quoting *Strickland*,

---

conviction counsel. *See Maples v. Thomas*, 131 S. Ct. 1718 (2011) (order granting certiorari). Since we do not address the substance of similar claims, we see no need to await the Supreme Court's decision.

466 U.S. at 687-88). " 'Surmounting [this] high bar is never an easy task.' " *Harrington v. Richter*, ___ U.S. ___, ___, 131 S. Ct. 770, 788 (2011) (quoting *Padilla v. Kentucky*, 599 U.S. ___, ___, 130 S. Ct. 1473, 1485 (2010)). Stokley cannot overcome the first hurdle—that "counsel's representation fell below an objective standard of reasonableness."[5] *Strickland*, 466 U.S. at 687-88.

## C.  INEFFECTIVE ASSISTANCE

In assessing counsel's performance, we "must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Harrington*, 131 S. Ct. at 787 (internal quotation marks omitted). We take "every effort to eliminate the distorting effects of hindsight," *Earp*, 431 F.3d at 1174 (internal quotation marks omitted), "give the attorneys the benefit of the doubt," and "entertain the range of possible reasons . . . counsel may have had for proceeding as they did," *Pinholster*, 131 S. Ct. at 1407 (internal quotation marks and alteration omitted). Thus, "[e]ven under *de novo* review," the standard we apply "is a most deferential one." *Harrington*, 131 S. Ct. at 788. "The question is whether [counsel's] representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotation marks omitted).

**[7]** Stokley's trial counsel undertook an extensive investigation into mitigating factors before sentencing. Most significant to this appeal, counsel secured two medical opinions regarding Stokley's mental health. Morris examined Stokley at counsel's request and diagnosed him with borderline personality disorder. That disorder, Morris told the sentencing court, means that Stokley has "difficulties with impulse control and poor judgment." Morris characterized these difficul-

---

[5]We also note that the PCR court held that Stokley's ineffective assistance claim "is meritless for lack of a showing of prejudice."

ties as "severe" and stated that Stokley's borderline personality disorder would lead to "impulsivity" and "outbursts" of anger. He also expressly tied Stokley's impulse control problems to Arizona's mitigation statute by testifying that Stokley was impaired in his "capacity to appreciate the wrongfulness of his conduct . . . at the time of the [crime]."

**[8]** Mayron's neurological examination, meanwhile, demonstrated that Stokley's brain was "moderately to severely impaired" as a result of numerous head injuries. Mayron diagnosed Stokley with "a permanent mild right hemiparesis[6] and hemisensory deficit" as well as "permanent post-concussion syndrome memory impairment and disturbance [characterized by] increased difficulty with impulse control." As this diagnosis suggests, Mayron opined that "[h]ead injuries of [the] severity [of Stokley's] are invariably related to" problems with "concentration, attention span . . . , memory, personality disturbance, mood disturbance, irritability, depression, [and] impulse control disturbance." Stokley's "ability to make good judgments," his "[e]motional control," and his "ability to plan ahead and to reflect" are all impaired.

**[9]** Counsel also knew that at least two neuropsychological tests had been performed on Stokley at the time of sentencing. Barbour administered one such test at counsel's behest. Hoffman's report based on his pre-crime examination of Stokley, meanwhile, found that Stokley's performance on a neuropsychological test "d[id] not indicate [organic] brain damage."

**[10]** This record compels the conclusion that counsel generally undertook "active and capable advocacy" on Stokley's behalf. *Harrington*, 131 S. Ct. at 791. In particular, both Morris and Mayron testified at sentencing in ways that directly supported Stokley's case in mitigation. Under Ariz. Rev. Stat.

---

[6]"Hemiparesis" is a medical term used to refer to reduced muscular strength on one side of the body and is frequently associated with damage to the portion of the brain charged with controlling that part of the body.

§ 13-751(G)(1), a defendant demonstrates the existence of a
mitigating circumstance if he proves that his "capacity to
appreciate the wrongfulness of his conduct or to conform his
conduct to the requirements of law was significantly
impaired" at the time of the offense. Morris expressly testified
that this mitigating factor was satisfied and told the sentenc-
ing court that Stokley had "severe" problems with impulse con-
trol.[7] Mayron said that Stokley had "moderate to severe" brain
damage and linked Stokley's impulsivity to that damage. In
short, counsel oversaw the investigation of Stokley's mental
health from psychological, neurological, and neuropsy-
chological perspectives and elicited testimony that both
explicitly and implicitly concluded that Stokley's mental
health satisfied the relevant mitigating factor.

[11] Stokley nevertheless claims that, despite counsel's
emphasis on his mental health, counsel was required to order
an entire battery of neuropsychological tests. We reject this
argument. Counsel had no reason to believe that step would
be necessary. After examining Stokley, Morris did suggest
that Stokley be seen by either a neurologist *or* a neuropsy-
chologist, and counsel took that advice by sending Stokley to
Mayron, a neurologist. Mayron later provided the mirror-
image observation that analysis of "[b]ehavioral changes"
occurs "by referral to a psychologist or a neuropsychologist."
Although that piece of advice was tendered at the sentencing
hearing, counsel had already followed it, too, by having Mor-
ris, a psychologist, examine Stokley. In short, neither of the
experts counsel hired unequivocally stated that Stokley should
be examined by a neuropsychologist—and counsel was under
no obligation to seek neuropsychological testing in the
absence of any such recommendation. *See Babbitt v. Calde-
ron*, 151 F.3d 1170, 1174 (9th Cir. 1998) ("[C]ounsel did
retain medical experts whom he thought well-qualified. The

---

[7]While Morris did concede that he was "unable to evaluate" Stokley's
state of mind at the time of the crime, this concession stemmed from Stok-
ley's own statements, not from any failing on counsel's part.

experts he had retained did not state that they required the services of . . . additional experts. There was no need for counsel to seek them out independently.").

**[12]** In fact, it is not even clear that further neuropsychological testing would have been to Stokley's advantage. Hoffman's report said that a previous neuropsychological examination revealed *no* brain damage.[8] Counsel was therefore in a position reasonably to conclude that additional neuropsychological testing could undermine Stokley's case rather than aid it.

Stokley also argues that, without neuropsychological testing, counsel was unable to demonstrate the link between Stokley's brain injuries and his behavior at the time of the offense. But Mayron's report and testimony at sentencing expressly linked the two; Mayron stated that impulsivity "invariably" followed from the sort of brain injury that he diagnosed. Thus, although Stokley cites our decision in *Caro v. Woodford*, 280 F.3d 1247, 1258 (9th Cir. 2002), for the proposition that evidence that "explain[s] the effects [of] physiological defects" on a petitioner's behavior is crucial, counsel put precisely that kind of evidence before the sentencing court.[9] For that reason,

---

[8]Stokley argues that Hoffman misinterpreted the results of the neuropsychological test he administered and that those results were actually, under newer standards, positive for brain damage. But at least one of the experts hired by trial counsel reviewed the Hoffman report without noting any irregularity in Hoffman's conclusions. Hoffman's alleged error thus does not provide a basis for impugning counsel's effectiveness. *See, e.g.*, *Sims v. Brown*, 425 F.3d 560, 585-86 (9th Cir. 2005) ("[A]ttorneys are entitled to rely on the opinions of mental health experts, and to impose a duty on them to investigate independently of a request for information from an expert would defeat the whole aim of having experts participate in the investigation." (internal quotation marks omitted)).

[9]We note that this passage occurs in *Caro*'s discussion of the *prejudice* prong of *Strickland*. Our *ineffectiveness* holding in *Caro* was premised on counsel's failures "to seek out an expert to assess the damage done by [the] poisoning of Caro's brain," to provide "mental health experts with information needed to develop an accurate profile of the defendant's mental health," and to present testimony that the petitioner was abused as a child constituted ineffective assistance. *See* 280 F.3d at 1254-55. Stokley's trial counsel committed none of these failings.

and because counsel could have reasonably believed that additional neuropsychological testing was neither necessary nor advantageous, we hold that counsel's failure to seek such testing did not constitute ineffective assistance.

Stokley's contention that counsel acted ineffectively by failing to follow up with Mayron is similarly unpersuasive. Mayron now claims that, had he been consulted by counsel after his examination of Stokley and before the sentencing hearing, he "would have recommended that Mr. Stokley be examined by a qualified neuropsychologist." This statement contradicts Mayron's testimony at sentencing that either a psychologist *or* a neuropsychologist would suffice. More importantly, Mayron does not allege that he actually made this recommendation to counsel, and previous neuropsychological testing of Stokley led to a report that undermined Stokley's case by finding no organic brain damage. We are in no position to say that counsel's failure affirmatively to seek out Mayron's advice amounted to constitutionally ineffective assistance. *See, e.g.*, *Murtishaw v. Woodford*, 255 F.3d 926, 946 (9th Cir. 2001) ("[C]ounsel's actions are not deficient just because, through 'the fabled twenty-twenty vision of hindsight,' a better course of action becomes apparent.") (quoting *Campbell v. Wood*, 18 F.3d 662, 673 (9th Cir. 1994) (en banc)); *Babbitt*, 151 F.3d at 1174 (rejecting ineffective assistance "arguments predicated upon showing what defense counsel could have presented, rather than upon whether counsel's actions were reasonable").

**[13]** In sum, "[t]his is not a case in which the defendant's attorneys failed to act while potentially powerful mitigating evidence stared them in the face." *Bobby v. Van Hook*, ___ U.S. ___, ___, 130 S. Ct. 13, 19 (2009). "It is instead a case, like *Strickland* itself, in which defense counsel's 'decision not to seek more' mitigating evidence from the defendant's background 'than was already in hand' fell 'well within the range of professionally reasonable judgments.' " *Id.* (quoting *Strickland*, 466 U.S. at 699). Even more importantly, it is a case

where counsel pursued the brain damage and mental health strategy. Stokley accordingly has not presented a colorable claim of ineffective assistance of counsel.

## CONCLUSION

Regardless of whether *Pinholster* bars consideration of Stokley's new evidence, Stokley is not entitled to habeas relief. If *Pinholster* applies, it precludes the only relief Stokley seeks, and even if we may consider the evidence Stokley introduced in the district court, Stokley has failed to present a colorable claim of ineffective assistance of counsel. We accordingly **AFFIRM** the district court's denial of relief.[10]

---

[10]We decline Stokley's request to expand the certificate of appealability to encompass the claim that counsel ineffectively presented a mental state defense at trial. Stokley acknowledges that this precise claim was not included in his state petition. He nonetheless argues that the district court erred by finding the claim to be unexhausted because it is substantively identical to his sentencing-phase ineffective assistance claim. We cannot agree. Stokley contends in his sentencing-phase claim that counsel should have presented evidence to demonstrate that brain damage prevented him from controlling his impulses at the time of the crime. Under Arizona law, however, that type of evidence is inadmissible at trial: "An expert witness may not testify specifically as to whether a defendant was or was not acting reflectively at the time of a killing." *State v. Christensen*, 628 P.2d 580, 583-84 (Ariz. 1981). The evidence to be weighed when determining whether a different result would have obtained at trial but for counsel's ineffectiveness is very different from the evidence to be weighed when determining whether a different sentence would have resulted but for counsel's ineffectiveness. We accordingly conclude that the two claims are undebatably distinct. *See Lopez v. Schriro*, 491 F.3d 1029, 1039-40 (9th Cir. 2007).