**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD DALE STOKLEY,
*Petitioner-Appellant,*

v.

CHARLES L. RYAN,
*Respondent-Appellee.*

No. 09-99004

D.C. No.
4:98-CV-00332-FRZ
District of Arizona,
Tucson

ORDER

Appeal from the United States District Court
for the District of Arizona
Frank R. Zapata, Senior District Judge, Presiding

Argued and Submitted
November 5, 2012—Portland, Oregon

Filed November 15, 2012

Before: M. Margaret McKeown, Richard A. Paez,
and Carlos T. Bea, Circuit Judges.

Order;
Dissent by Judge Paez

# SUMMARY[*]

## Habeas Corpus/Death Penalty

The panel denied a motion to stay the mandate in an appeal by a capital prisoner who also sought a remand for an evidentiary hearing in the district court to determine whether abandonment by post-conviction counsel constituted cause to excuse a procedural default under *Maples v. Thomas*, 132 S. Ct. 912 (2012).

The panel previously affirmed the district court's denial of petitioner Stokley's 28 U.S.C. § 2254 habeas corpus petition challenging a conviction and capital sentence for murder. Stokley then moved to stay the mandate on the ground that *Maples* constituted an intervening change in the law that could warrant a significant change in result. He sought a remand to the district court for an evidentiary hearing to determine whether, under *Maples*, his abandonment by his state post-conviction attorney constituted cause to excuse the procedural default of his underlying claim–that the Arizona Supreme Court failed to consider mitigating evidence and that counsel should have raised a claim that the state court erroneously required a nexus to the crime.

The panel held that, even if *Maples* may encompass multiple forms of abandonment arising out of agency law, there was no such abandonment here that excused the default. The panel further held that there was no actual prejudice

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

because the Arizona Supreme Court's opinion suggests that it weighed and considered all evidence and, even if it erroneously required a nexus between the mitigating evidence and the crime, Stokely has not shown that the error had a substantial and injurious impact on the verdict.

Judge Paez dissented. He agreed that *Maples* is not limited solely to actual abandonment, but was not persuaded by the majority's conclusion that Stokley was not abandoned. Judge Paez would grant the motion to stay the mandate and remand to the district court for a determination of cause and prejudice and, if appropriate, the merits of the underlying claim, because Stokley has alleged a prima facie case of abandonment that might constitute cause to overcome procedural default. Judge Paez would not address the issue of prejudice with respect to the procedural default or the merits of the underlying claim, because the court lacks a complete record.

---

## COUNSEL

Jennifer Yolanda Garcia (argued), Federal Public Defender's Office, Phoenix, Arizona; Amy Krauss, Law Office of Amy B. Krauss, Tucson, Arizona; Cary Sandman, Federal Public Defender's Office, Tucson, Arizona; Jon M. Sands, Federal Public Defender's Office, Phoenix, Arizona, for the petitioner-appellant.

Thomas C. Horne, Arizona State Attorney General; Jonathan Bass (argued), Assistant Attorney General Criminal Appeals/Capital Litigation Division, for the respondent-appellee.

**ORDER**

Richard Dale Stokley, a state prisoner, was sentenced to death in 1992 for the murders of two 13-year-old girls. After pursuing direct review and post-conviction relief in the Arizona state courts, he filed a habeas petition in federal district court, which was denied on March 17, 2009. Stokley's appeal from that decision was denied by this court in *Stokley v. Ryan*, 659 F.3d 802 (9th Cir. 2011). On October 1, 2012, the Supreme Court denied Stokley's petition for certiorari. *Stokley v. Ryan*, No. 11-10249, 2012 WL 1643921 (Oct. 1, 2012). Stokley now asks this court to stay issuance of the mandate on the ground that the Supreme Court's holding in *Maples v. Thomas*, 132 S. Ct. 912 (2012), constitutes an intervening change in the law that could warrant a significant change in result. In *Maples*, the Court held that abandonment by post-conviction counsel could provide cause to excuse procedural default of a habeas claim. *Id.* at 927.

Under Federal Rule of Appellate Procedure 41(d)(2)(D), this court "must issue the mandate immediately when a copy of a Supreme Court order denying the petition for writ of certiorari is filed." Fed. R. App. P. 41(d)(2)(D). Nonetheless, this court has the authority to issue a stay in "exceptional circumstances." *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1529 (9th Cir. 1989), *cert. denied*, 493 U.S. 1076 (1990). To constitute an exceptional circumstance, an intervening change in law must require a significant change in result for the parties. *See Beardslee v. Brown*, 393 F.3d 899, 901 (9th Cir. 2004) ("[A]n intervening change in the law is an exceptional circumstance that may warrant the amendment of an opinion on remand after denial of a writ of certiorari."); *Adamson v. Lewis*, 955 F.2d 614, 619-20 (9th

Cir. 1992) (en banc) (finding an absence of exceptional circumstances where subsequent Supreme Court authority did not require a significant change in result). The question before us is whether Stokley has presented such an exceptional circumstance.

Stokley asks for a remand to the district court for an evidentiary hearing to determine whether, under *Maples*, he was "abandoned" by his state post-conviction attorney and thus has cause to excuse his procedural default of his underlying claim that the Arizona Supreme Court failed to consider mitigating evidence in violation of *Eddings v. Oklahoma*, 455 U.S. 104, 114-15 (1982), and *Skipper v. South Carolina*, 476 U.S. 1, 4-5 (1986).[1] Stokley contends that his state post-conviction counsel erred in failing to raise a claim that the mitigating evidence did not require a nexus to the crime. Under *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), Stokley is barred from litigating this procedurally defaulted claim in a federal habeas proceeding unless he can show both cause for the default and actual prejudice resulting from the alleged error. Because Stokley cannot establish either cause or prejudice, and thus does not meet the exceptional circumstances threshold, we deny his motion to stay the mandate.

Although we credit Stokley's argument that the logic in *Maples* may encompass other forms of abandonment arising out of the principles of agency law, we nonetheless conclude

---

[1] At the hearing on this motion, Stokley's counsel stated that the record contained sufficient evidence to justify the relief requested and did not raise any issues that required factual development through the requested evidentiary hearing. Thus, remanding the case at this stage for an evidentiary hearing would serve no purpose.

that there was no abandonment here. As we observed in our prior decision, Stokley was placed in an "unenviable situation during the state post-conviction proceedings" because of the actions of his state post-conviction lawyer, Harriette Levitt. 659 F.3d at 810. However, Stokley was always actively represented by counsel. Although Stokley complained to the trial judge about Levitt, the trial court affirmatively ordered continued representation by Levitt and the Arizona Supreme Court affirmed that order. The state courts did not view the relationship as a failed one. Unlike in *Holland v. Florida*, 130 S. Ct. 2549, 2568 (2010), where there was a "near-total failure to communicate," the clash here was one of substantive disagreement, not abandonment. And, unlike in *Maples*, Stokley was not "left without any functioning attorney of record." 132 S. Ct. at 927.

Levitt raised two claims in Stokley's petition for post-conviction relief. Another lawyer subsequently filed a pleading suggesting an additional 31 claims for habeas relief. Levitt considered and, in large part, rejected the proposed additional claims. Tellingly, current counsel does not attempt to revive the claims that Levitt rejected. Levitt then raised two further claims in a supplemental petition for post-conviction relief. It is within the responsibility of counsel to evaluate potential claims and make strategic decisions about which ones to bring. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984). Levitt made that judgment, but neither she nor the other attorney flagged a possible claim under *Eddings v. Oklahoma* or *Skipper v. South Carolina*. Although Stokley may have a credible argument about Levitt's ineffectiveness

and negligence, he has not demonstrated that Levitt abandoned him within the scope of *Maples*.[2]

Even if *Maples* provides Stokley cause to excuse his procedural default, Stokley has not made a sufficient showing of actual prejudice. Stokley must establish "not merely that the [alleged error] . . . created a *possibility* of prejudice, but that [it] worked to his *actual* and substantial disadvantage," infecting the entire proceeding with constitutional error. *See Murray v. Carrier*, 477 U.S. 478, 494 (1986) (citation omitted) (emphasis in original); *see also Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (prejudice requires a showing that the error has a "substantial and injurious effect" on the sentence).

Stokley has a colorable claim that the Arizona Supreme Court, when it reviewed evidence of his abusive childhood and his behavior during pre-trial incarceration, violated the *Eddings* principle that the court must consider, as a matter of law, all relevant mitigating evidence. *See State v. Stokley*, 898 P.2d 454, 473 (Ariz. 1995) ("A difficult family background alone is not a mitigating circumstance. . . . This can be a mitigating circumstance only 'if a defendant can

---

[2] Under *Teague v. Lane*, 489 U.S. 288, 310 (1989), new *constitutional* rules of criminal procedure do not apply retroactively to cases filed by state prisoners seeking collateral federal habeas relief. *Teague* does not preclude retroactive application of *Maples* here. *Maples* did not establish a *constitutional* rule, but simply provided a new avenue of establishing cause for a procedural default based on "principles of agency law and fundamental fairness." *Maples*, 132 S. Ct. at 928; *see also Reina-Rodriguez v. United States*, 655 F.3d 1182, 1188 (9th Cir. 2011) (holding that a threshold question in determining if *Teague* applies is whether the articulated rule is a new *constitutional* rule, and that "if the new rule is not founded on constitutional concerns, it does not implicate *Teague*").

show that something in that background had an effect or impact on his behavior that was beyond the defendant's control.' . . . Although he may have had a difficult childhood and family life, [Stokley] failed to show how this influenced his behavior on the night of the crimes.") (citations omitted)); *id.* ("Although long-term good behavior during post-sentence incarceration has been recognized as a possible mitigating factor, . . . we, like the trial court, reject it here for pretrial and presentence incarceration.").

However, on balance, the Arizona Supreme Court's opinion suggests that the court did weigh and consider all the evidence presented in mitigation at sentencing. *See Stokley*, 898 P.2d at 468 ("Consistent with our obligation in capital cases to independently weigh all potentially mitigating evidence . . . [w]e turn, then, to a consideration of the mitigating factors."); *id.* at 472 ("As part of our independent review, we will address each alleged mitigating circumstance."); *id.* at 468 ("The sentencing judge must consider 'any aspect of the defendant's character or record and any circumstance of the offense relevant to determining whether the death penalty should be imposed.' . . . The sentencing court must, of course, consider all evidence offered in mitigation, but is not required to accept such evidence." (citations omitted)); *id.* at 465 ("[T]his court independently reviews the entire record for error, . . . considers any mitigating circumstances, and then weighs the aggravating and mitigating circumstances sufficiently substantial to call for leniency."); *id.* at 473 ("Family history in this case does not warrant mitigation. Defendant was thirty-eight years old at the time of the murders."). The Arizona Supreme Court carefully discussed all the statutory and non-statutory mitigating factors, step by step, in separate paragraphs in its opinion. *See id.* at 465-74.

However, even assuming the Arizona Supreme Court did commit causal nexus error as to Stokley's good behavior in jail and his difficult childhood, Stokley cannot demonstrate actual prejudice because he has not shown that the error, if any, had a substantial and injurious impact on the verdict. An error requires reversal only if it "had substantial and injurious effect or influence in determining the . . . verdict.'" *Brecht*, 507 U.S. at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *cf. Cullen v. Pinholster*, 131 S. Ct. 1388, 1408 (2011) (holding in a *Strickland* challenge that the test for prejudice at sentencing in a capital case is "whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." (internal quotation marks omitted)).

The Arizona Supreme Court reviewed and discussed each of the aggravating and mitigating factors individually. The court found three statutory aggravating circumstances were proven beyond a reasonable doubt: (1) Stokley was an adult at the time the crimes were committed and the victims were under the age of fifteen; (2) Stokley was convicted of another homicide committed during the commission of the offense; and (3) Stokley committed the offense in an especially heinous, cruel, and depraved manner. 898 P.2d at 465-68. The Arizona Supreme Court's conclusion that there were no grounds here substantial enough to call for leniency is consistent with the sentencing court's determination that "even if any or all of the mitigating circumstances existed, 'balanced against the aggravating circumstances found to exist, they would not be sufficiently substantial to call for

leniency.'"[3]  *Id.* at 471.  The Arizona courts considered the mitigation evidence—including good behavior in jail and childhood circumstances— insufficient to warrant leniency. In light of the Arizona courts' consistent conclusion that leniency was inappropriate, there is no reasonable likelihood that, but for a failure to fully consider Stokley's family history or his good behavior in jail during pre-trial incarceration, the Arizona courts would have come to a different conclusion.  *See Hitchcock v. Dugger*, 481 U.S. 393, 399 (1987) (referencing harmless error in connection with the exclusion of non-statutory mitigating evidence).  In sum, because the claimed causal nexus error, if any, did not have a substantial or injurious influence on Stokley's sentence, Stokley cannot establish prejudice.  *Brecht*, 507 U.S. at 630-34.

In light of the high bar that must be met for this court to stay the mandate, Stokley's motion to stay the mandate is DENIED.

---

[3] The sentencing court found the following facts beyond a reasonable doubt.  Stokley was convicted of murdering two 13-year-old girls over the July 4th weekend in 1991.  Stokley is a person of above average intelligence.  At the time of the crime, he was 38 years old.  Stokley intended that both girls be killed.  He killed one of the girls and his co-defendant killed the other.  Before the men manually strangled the girls to death, both men had sexual intercourse with the victims.  Both bodies "were stomped upon with great force," and one of the children bore "the clear chevron imprint" from Stokley's tennis shoes on her chest, shoulder, and neck.  Both victims were stabbed in their right eyes with Stokley's knife, one through to the bony structure of the eye socket.  The girls likely were unconscious at the time of the stabbing.  The girls' bodies were dragged to and thrown down a mine shaft.

PAEZ, Circuit Judge, dissenting:

I agree that *Maples* is not limited solely to *actual* abandonment, but I am not persuaded by the majority's conclusion that Stokley was not abandoned because, technically, he "was always actively represented by counsel." To obtain the remand he requests, Stokley need only make a prima facie showing of abandonment under *Maples* that might constitute cause to overcome procedural default. *See Moorman v. Schriro*, 672 F.3d 644, 647-48 (9th Cir. 2012). Despite the limited briefing on the pending motion, Stokley has alleged a prima facie case of abandonment that may demonstrate cause to overcome procedural default under *Maples*. Moreover, as the majority recognizes, he has a colorable constitutional claim. Our inquiry should end there. I would grant the motion and remand to the district court for determination of cause and prejudice and, if appropriate, the merits of Stokley's constitutional claim.[1]

*Maples* rests squarely on agency principles. 132 S. Ct. at 922-24. To explain how an agency relationship may be actually or constructively severed, the Supreme Court relied on Justice Alito's concurrence in *Holland v. Florida*, 560 U.S. ——, 130 S. Ct. 2549 (2010), to distinguish attorney negligence from abandonment. "Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word." 132 S. Ct. at 923, citing

---

[1] I agree with the majority's assumption that *Maples* may be sufficient to establish the "exceptional circumstance" necessary to justify the exercise of this court's power to stay the mandate following a denial of certiorari. I also agree with the majority's analysis that *Maples* applies retroactively to Stokley's case.

*Holland*, 130 U.S. at 2568 (Alito, J., concurring). Justice Alito's concurrence in *Holland* also noted that the agency relationship was constructively severed "particularly so if the litigant's reasonable efforts to terminate the attorney's representation have been thwarted by forces wholly beyond the petitioner's control." *Holland*, 130 S. Ct. at 2568. Indeed, our court's precedent—while not finding abandonment—recognizes that *Maples* rests on agency principles and that a serious breach of loyalty can sever the attorney-client relationship in a manner that may constitute constructive abandonment sufficient to establish cause. *See Towery v. Ryan*, 673 F.3d 933, 943 (9th Cir. 2012), *cert. denied*, 132 S. Ct. 1738 (2012) (separately analyzing two prongs of actual abandonment or "serious breach of loyalty" and distinguishing *Holland*, which involved violations of fundamental canons of professional responsibility, from Towery's circumstances, which did not).

Stokley has presented a prima facie case of constructive abandonment like that in *Holland* for three reasons. First, like Holland, he contemporaneously alleged that postconviction appointed counsel Harriette Levitt was acting against his interests when he wrote three letters to the Arizona courts describing the breakdown in their relationship and insisting that she not be reinstated as his counsel. Further, Stokley—again, like Holland—complained to the state bar, which Levitt acknowledged in her motion to withdraw, citing "a complete breakdown of the attorney-client relationship." Second, Stokley also made reasonable efforts to terminate Levitt's representation, only to be thwarted by the State's vigorous advocacy that ultimately achieved Levitt's reinstatement. Finally, a week after Levitt was reinstated by the superior court as Stokley's counsel, she filed a petition for review of the denial of the post-conviction relief petition that

systematically argued against the claims raised by substitute counsel, Carla Ryan, in a motion during Ryan's brief representation of Stokley. Nevertheless, Levitt concluded in that petition that Ryan should have been kept on the case.

On the basis of these actions, Stokley alleges—and the record supports—a prima facie case that Levitt had a conflict of interest and that her actions, as Stokley has argued before the district court and in the moving papers here, "took up the mantle of the prosecutor." Whereas the petitioner in *Maples* "in reality . . . had been reduced to pro se status," 132 S. Ct. at 927, Levitt's actions regarding Stokley's attempts to fairly present his claims could arguably have left him in a situation worse than a pro se petitioner.[2]

In light of *Maples*, it is now recognizable that Stokley's situation in postconviction proceedings was worse than simply "unenviable." 659 F.3d at 810. While it has no legal bearing on the present issue, I note at the outset that Harriette Levitt is the same attorney whose conduct was at issue in the Supreme Court's recently-created ineffective assistance of counsel exception to the once settled rule in *Coleman*. *See Martinez v. Ryan*, 132 S. Ct. 1309 (2012).

Stokley alleged abandonment by Levitt at the time his disputes with her were at issue. His three letters to the Arizona courts provide evidence of the breakdown in relationship and allege specific details of their interactions

---

[2] Moreover, at oral argument counsel for Stokley noted that Levitt refused to provide the record to Stokley even after he asked for it. If true, this refusal further supports a prima facie case of a serious breach of the duty of loyalty and interference with Stokley's attempts to fairly present his claims.

and her lack of interest or diligence in his case that might, if true, prove that Levitt was not acting as Stokley's agent in any meaningful sense of that word. Perhaps most disturbingly, Stokley's letter to the Arizona Supreme Court makes allegations that, if true, could indicate a conflict of interest that would constitute a serious breach of the duty of loyalty. Describing what happened after Levitt withdrew and Ryan was appointed, Stokley wrote:

> But that's when I learned that it's really the Attorney General's Office that controls these appointments. They embarked on a childish and improper personality war, in which they praised Harriette Levitt while denigrating Carla Ryan in court documents. Subsequently, Judge Borowiec caved in easily and let the AG dictate who would represent me. This was wrong, should not have occurred, and this court erred in not correcting it as was asked in the Special Action. This appeal is about life or death, and should not be about personalities or interference by the AG because they prefer one attorney over another. Sure they'd prefer an attorney who does nothing over one who fights.

The record shows that the State vigorously advocated for Ryan's removal and Levitt's reinstatement, which is ultimately what happened. Four days after the superior court allowed Levitt to withdraw and appointed Ryan, the State moved to vacate Levitt's withdrawal or, alternatively, to "clarify" the role of substitute counsel. The next day, Ryan filed a request for appointment of co-counsel. The State opposed that motion as well in an unprofessionally worded opposition, first rearguing that Levitt should be reinstated because there was no reason for her withdrawal, reiterating

that because there "is no right to effective assistance of counsel in Rule 32 proceedings" that "Stokley's and Ryan's opinions about Levitt's performance are irrelevant, as were Levitt's reasons for requesting withdrawal." The State also argued that "without a doubt, Ryan's request for a side-kick (from her own law firm) contemplates milking this case for all it is worth as a cash cow" and that "Ryan should be taken off the case and her motions denied. Capital litigation is not an unlimited pot-boiler for the enrichment of private attorneys." The State also alleged that Ryan would not follow the rules.[3]

The trial court issued a minute order on April 27, 1997, vacating its previous order allowing Levitt to withdraw and reinstating her as counsel, stating only that the State's position was "well taken." The majority suggests that Levitt's May 7, 1997 petition for review (in which she argued systematically against the potential claims Ryan raised) and subsequent October 10, 1997 supplemental Rule 32 petition for post-conviction relief (in which she raised two additional claims beyond the two in her initial petition) reflect strategic choices. Levitt's filings, however, suggest an overriding

---

[3] The majority's holding that Stokley "was always actively represented by counsel" is true only in the most strictly formal sense and obscures the real issue, which is Levitt's abandonment that was fully consummated after her forced reinstatement. During the short time Ryan was representing Stokley, she was not only compelled to deal with the state's motions interfering with her representation, but she also sought extensions of time to file a petition for review. The placeholder claims raised in Ryan's motion for reconsideration and request for leave to amend the postconviction petition were *later* systematically dismantled by Levitt in her May 7, 1997 petition for review. Indeed, as noted above, it is conceivable that Levitt's action could have left Stokley in a situation worse than a pro se petitioner.

concern with defending herself from the "attack on the effectiveness of undersigned counsel, all of which is meritless" while simultaneously suggesting that "new counsel [Ryan] should have been kept on the case." Indeed, a claim derided as "completely meritless" in Levitt's May 7, 1997 petition for review filed shortly after her reinstatement was resurrected as the first of two additional claims in the supplemental Rule 32 petition Levitt later filed after the Arizona Supreme Court affirmed her reinstatement.[4] These filings do not support the majority's suggested narrative of a loyal advocate making difficult strategic decisions in the best interest of her client. Thus, I do not agree with the majority that the breakdown of relationship was nothing more than a "substantive disagreement."

This record, in addition to her own filings, supports a prima facie case of abandonment by Levitt sufficient to require remand for a full determination of whether cause and prejudice exist sufficient to overcome the procedural default.

Furthermore, unlike the majority I would not address the issues of either prejudice with respect to procedural default or the merits of the constitutional claim at this stage. When first presented with this claim that the Arizona Supreme Court erred in its review of the death sentence under *Eddings* and *Skipper*, the district court declined to reach the merits because the claim was technically exhausted and procedurally barred. Case 4:98-cv-00332-FRZ, Dkt 70, Order and Opinion on Procedural Status of Claims at 15-16. *No court* has considered the issue of prejudice—either as to procedural

---

[4] The merits of this claim are not at issue here. The claim concerned the ineffectiveness of trial counsel for failing to object to gruesome autopsy photographs.

default or to the merits of the constitutional claim—because, prior to *Maples*, there was no cause for the procedural default. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The relief requested by the present motion specifically asks us to stay the current proceedings and remand to the district court because "this Court lacks a complete record upon which it could address the merits of a *Maples* argument." Motion at 5. The majority omits the context of counsel's statements at argument about the sufficiency of the evidence in the record. When asked *only* about cause, "putting aside prejudice and putting aside the merits of the claim, just as to cause," counsel stated that no further evidentiary material was necessary to justify a finding that Levitt abandoned Stokley. Counsel immediately then said that "it would only be the prejudice and the merits of the underlying claim" that would warrant further development in the district court.

Without the benefit of any briefing on the issue of prejudice arising from the defaulted *Eddings* and *Skipper* claims, we are not in a position to decide whether Stokley can prove cause and prejudice sufficient to overcome procedural default. Rather than foreclosing these claims at this stage, I would stay the mandate and remand this case to the district court for the limited purpose of allowing it to determine in the first instance whether cause and prejudice exist, and to consider the merits of the claim if warranted. We would then be in a far better position to review the issue.

For all of the above reasons, I respectfully dissent.